## INOUYE et al. v. McGRAW BROS.
### No. 10716.

Court of Civil Appeals of Texas. Dallas.
July 26, 1930.

Rehearing Denied Oct. 4, 1930.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellants.

John Doyle and W. R. Abernathy, both of McKinney, for appellees.

VAUGHAN, J.

J. P. McGraw and T. W. McGraw, composing the partnership of McGraw Bros., appellees, as plaintiffs, sued J. Inouye individually and as a member of the partnership known as Southern Cotton Company, and also Southern Cotton Company, a partnership, and Lee West, Herman West, and Ed West, alleged to compose a partnership known as West Bros., defendants, in the district court of Knox county, alleging that the defendants conspired among themselves fraudulently to convert 100 bales of plaintiffs' cotton, pleading specifically that Herman West, acting for himself and the other defendants, did on December 16, 1924, represent to plaintiffs that he was the agent for the Southern Cotton Company and in such capacity did purchase of plaintiffs 100 bales of cotton, weighing 51,810 pounds at an agreed price of 105 points off "March New York"; that plaintiffs drew a draft (which was paid) on Southern Cotton Company for $10,672.20, as the initial payment for the cotton; that the balance of the purchase price was to be paid whenever plaintiffs "called" the cotton on the New York futures market; that plaintiffs did "call" the cotton on February 18, 1925, when March futures were selling at 24.55 cents per pound, thus fixing the final price of the cotton at 23.50 cents per pound, leaving the defendants owing plaintiffs the sum of $1,503.15, for which amount, plus interest and costs, plaintiffs sued.

Under proper proceedings had in the district court of Knox county, this cause was transferred to the district court of Collin county. Appellant, J. Inouye, filed an answer for himself and as a partner of Southern Cotton Company, and in its behalf pleaded (a) a general demurrer; (b) a special exception because of failure of plaintiffs to allege the name of the partners composing Southern Cotton Company; (c) a general denial; (d) special denials of any contract between plaintiffs and Southern Cotton Company, of any conspiracy to defraud plaintiffs, of any knowledge of representations made by Herman West, of alleged agency of the defendants Herman West, Lee West, and Ed West, or either of them.

As to the answer of the defendants West, it is only necessary to state that same embraced (1) a general denial; (2) a general demurrer; (3) special denial of the allegations of fraud;

·(4) allegation to the effect that the cotton in question was purchased of plaintiffs by Lee West, individually, and by him sold to Southern Cotton Company. Appellees, McGraw Bros., by trial amendment, pleaded that appellant Southern Cotton Company had subsequently ratified and confirmed the transaction involving the purchase of said 100 bales of cotton by Herman West under the representations that he was the representative and agent of and acting for said appellant in the purchase of said cotton.

A nonjury trial was had, which resulted in a judgment in favor of appellees J. P. McGraw and T. W. McGraw against Southern Cotton Company, a copartnership, and J. Inouye, a member thereof, jointly and severally, for $1,502.93, with interest and costs. No judgment was rendered against the Wests, nor did they recover anything on their cross-action; therefore, no reference will be made to the claim asserted by any of the parties against Lee West or as to the cross-action filed by Lee West against appellee J. P. McGraw.

Of the findings of fact made by the trial judge, the following are amply supported by the evidence, without contradiction, viz.: "That on December 17, 1924, the defendant, Herman West, called upon one of the plaintiffs, J. P. McGraw, relative to the purchase of 100 bales of cotton owned by plaintiffs, McGraw Brothers, at Munday, Texas; that said Herman West was an employee of Lee West, who did business under the trade name of West Brothers; that Lee West was the sole owner of the business known as West Brothers; that said Herman West represented to J. P. McGraw that he was an agent and representative of Southern Cotton Company and was negotiating for the purchase of said cotton for the Southern Cotton Company; that said Lee West, trading as West Brothers, was an independent cotton dealer, and was not employed as agent or as an employee of Southern Cotton Company; that said 100 bales of cotton were sold by McGraw Brothers at a price of 105 points off of March call in New York; that the said Herman West furnished to said McGraw Brothers the name of A. Norden & Company, brokers in New York City, as the name of the brokerage house through which call was to be made; that said Herman West drew a draft for $10,698.-88, dated December 17, 1924, payable on demand with bill of lading attached, payable to the order of McGraw Brothers, drawn on Southern Cotton Company, Galveston, Texas, and signed West Brothers by H. O. West, as part of the purchase price of said cotton; that the amount of said draft equalled 21¢ per pound for the cotton purchased; that the weight of the 100 bales of cotton * * * was calculated by said parties at the time of said transaction to be 50,820 pounds; that compress weights were to govern the weights; that there was a gain in the weight of the cotton at the compress of 990 pounds, and a loss in grade of 13½ points; that the Southern Cotton Company had no notice, information or knowledge of the representations made by Herman West to McGraw Brothers at the particular time of the purchase of the 100 bales; that said cotton was shipped by McGraw Brothers to Southern Cotton Company, Galveston, Texas, and that said draft for $10,698.88 was promptly paid by Southern Cotton Company; that on February 18, 1925, McGraw Brothers called cotton, as provided for in the sales contract, through the brokerage office of A. Norden & Company; that the call * * * was on the same day confirmed by said brokerage company to McGraw Brothers and to Southern Cotton Company, in accordance with instructions of McGraw Brothers to notify Southern Cotton Company that such brokers had sold 100 bales for their account under said order from McGraw Brothers, and that the Southern Cotton Company, in turn and on the same day, confirmed such sale; that the net balance of the purchase price of said 100 bales was thus fixed on February 18, 1925, at $1,273.67, after allowing credit for a gain in weights and deducting loss in grade; that the Southern Cotton Company mailed a check for $1,273.67, payable to the order of West Brothers to G. A. Wall, agent for the Southern Cotton Company at Brownwood, Texas; that on the date of the mailing of the check and the receipt thereof by G. A. Wall, that West Brothers were indebted to Southern Cotton Company in excess of $1,400.00; that upon receipt of said ·check, G. A. Wall, agent of Southern Cotton Company, deposited same to the credit of West Brothers in a bank at Brownwood, Texas, and demanded of Lee West, trading as West Brothers, a check for a like amount to be applied upon the indebtedness of West Brothers to Southern Cotton Company; that said Lee West did execute and deliver to the said G. A. Wall a check for such amount, and that said check was received by Southern Cotton Company and credited upon the indebtedness owing to it by West Brothers; that neither Lee West nor West Brothers knew why the money was deposited in the Brownwood bank, or that it was the balance due upon the * * * sale of cotton to the Southern Cotton Company, and merely sent their check at the request of the Southern Cotton Company; that shortly after this transaction McGraw Brothers demanded of Southern Cotton Company the sum of $1,503.15, which they claimed to be due to them for the balance of the purchase price of said 100 bales of cotton; that Southern Cotton Company declined to pay McGraw Brothers any sum whatsover on account of said balance claimed by said McGraw Brothers."

The above findings of fact are supported by the following evidence, viz.: Appellee J. P. McGraw testified: "That on or about Decem-

ber 17, 1924, I had a transaction with reference to the sale of 100 bales of cotton at Munday, Texas, with Herman West. Herman West came up one day and I had the cotton on the sample table and I told him what I would take for it. The next day we traded and put the cotton on call 105 below the market at New York, and it was to go to the Southern Cotton Company. I asked him who he was with and who this cotton was going to, and he said the Southern Cotton Company. McGraw Brothers owned this 100 bales of cotton at the time I sold it and made this trade with Herman West. I did not sell any of this cotton to Lee West personally. He was not there and neither was Ed West. Herman West was the man. I sold the cotton to Herman West and it was to go to Southern Cotton Company. I was not looking to Herman West to pay me and was not even looking to West Brothers to pay me. I asked Herman West who was this cotton to be put on call for and he said the Southern Cotton Company, and that was the trade. I made no investigation as to Herman West's authority, and it was not necessary."

To the draft drawn in favor of McGraw Bros. on Southern Cotton Company and signed by West Brothers by H. O. (Herman) West for $10,698.88, there was attached an invoice of date December 16, 1924, of the 100 bales of cotton, without any indication that it was an invoice made out by appellees, McGraw Bros., to appellant Southern Cotton Company, or that it was not an invoice of said cotton to Herman West or West Bros., the only name appearing thereon being that of McGraw Bros. at the top of the first page.

As to this transaction, Glenn Dobbs, a witness for and former employee of appellees McGraw Bros., testified: "In December 1924 I lived at Munday, Texas, and was keeping books for McGraw Brothers. I had something to do with the transaction in reference to the sale of the 100 bales of cotton by McGraw Brothers to Herman West." The witness, referring to the carbon copy of invoice introduced in evidence, testified: "I made out the original of this yellow sheet. In making out the invoice ordinarily it would show who the buyer is. I suppose the reason I did not put the name of the purchaser in there is because I just merely overlooked it, left it off. I took Herman West's word for his authority and I investigated the Southern Cotton Company and found that the Southern Cotton Company was alright. You see that draft is drawn by West Brothers on Southern Cotton Company, payable to McGraw Brothers. The reason that McGraw Brothers did not draw the draft direct on the Southern Cotton Company is because Herman West was there on that occasion and he wrote out the draft. It should have been, I suppose, the other way. It was just merely an oversight on my part. If West Brothers were in fact the purchasers

of the cotton from McGraw Brothers, and they had sold it to the Southern Cotton Company themselves, then that would have been the proper draft to have made, a draft by them on the Southern Cotton Company payable to McGraw Brothers."

G. A. Wall, a witness for appellant Southern Cotton Company, testified: "I am a partner in the Southern Cotton Company. I lived at Brownwood about six years and was connected with the Southern Cotton Company at Brownwood, was the agent of the company. The company did not have an agency at Abilene at that time. I had some dealings with the firm known as West Brothers. I would furnish West Brothers with a limit or tell them that I could use from 100 to 500 bales of cotton at a certain price, would furnish him with a limit of so many points off of a certain month in New York, according to the time of the year. I did not agree to pay Mr. Lee West any commission in connection with these transactions, and did not pay or agree to pay him any salary. In other words, I was simply buying whatever cotton he had to sell. In this particular case, neither Lee West nor Herman West nor Ed West, nor any of them, were our agents to represent Southern Cotton Company. I dealt with them as cotton merchants, just like I would go into a store and buy something. In this transaction, where this cotton belonged to McGraw Brothers, found its way into the hands of Southern Cotton Company, that was handled in that way. I got the cotton from West Brothers. This is the original invoice that I got from West in this transaction." The invoice referred to is dated December 16, 1924, for 100 bales of cotton and at the top contains the following:

"West Bros., Abilene, Texas

"Southern Cotton Company 23.50 by G. A. Wall, Brownwood, Texas

"For 100 bales of cotton, total weight 50820 lbs. at 21¢ $10672.20, bank exchange of ¼ of 1 per cent. $26.68 Total amount of draft $10698.88 Date of draft 12/16/24 Shipped from Munday, Texas."

Under the terms of the contract made by McGraw Bros. with Herman West, under which said 100 bales were sold, McGraw Bros. were to do the calling on that transaction, viz., the selling of the cotton in New York. The cotton was called by McGraw Bros. February 18, 1925, by wire of that date sent by them to A. Norden & Co. of New York. Said cotton was on that date sold at 24.55 cents per pound for account of appellant Southern Cotton Company; said sale was promptly reported by telegraph to appellant Southern Cotton Company, and appellees, McGraw Bros., said communications being dated February 18, 1925.

In reference to the cotton being called by McGraw Bros., the witness Wall testified as

follows: "According to the testimony that I have heard here McGraw did the calling in this case. McGraw was not the seller to me or to the Southern Cotton Company. I am going by the record and the other testimony that I have heard; I do not know who called the cotton whether West or McGraw or who. It is customary for the seller to do the calling. I know of other instances in my experience as a cotton man where someone other than the seller did the calling. There have been cases just along the line of this transaction, other cases where the price has been fixed by other than the original seller of the cotton. That was not governed by the contract at the time the cotton was sold and in this particular instance I didn't know McGraw Brothers in the transaction at all. A transaction of this kind with call on New York is for the benefit of the seller of the cotton."

On this phase of the case, under examination by the trial judge, the witness further testified:

"The reason the confirmations made by our agent or broker in New York were made in the name of McGraw Brothers and Southern Cotton Company is because of the fact that McGraw Bros. wired New York to fix the price on this cotton and that is customary and is done every day with the seller of the cotton. We possibly some days may fix twenty thousand bales of cotton to different brokers in New York and they in turn wire us back the price at which it has been fixed.

"Q. I know, but the confirmation telegrams there that passed between McGraw Bros. and Southern Cotton Company and the admitted agent of the Southern Cotton Company, the broker Mr. Norden they show that the contract was made between McGraw Bros. and the Southern Cotton Company? A. Well if you please I could wire right now, I could wire A. Norden & Company or any one in this court room might do it and say fix or sell one and sign my name G. A. Wall or any one else and they would fix the price on that transaction and wire the Southern Cotton Company in Dallas that they had fixed the price. Of course we could catch the mistake or error in doing that. The reason the Southern Cotton Company does not repudiate it if they have no contract with McGraw Bros. is because they check up the call and check up; they know that they have got an idea that McGraw Bros. had shipped some cotton and they very probably call me at Brownwood or Abilene and ask me who this contract was for but at no time did I ever talk to McGraw Bros. or ever buy a bale of cotton from them and never saw any of them until this case came up at all.

"Q. The point I am asking is why should the Southern Cotton Company ratify or agree to this sale if they never had any business transaction with McGraw Bros.? A. Because of the fact that this cotton had been shipped

by McGraw for West Bros. and the transaction was cleared up that afternoon. They have called me numbers of times, in fact being in the Dallas office now, we call the different agents as to price fixing on cotton—we don't know who it was intended for, what contract it was intended to apply against and that has to be straightened out in the afternoon of the day that the price has been fixed. At the time this price was fixed I did not know at the time that West Bros. had bought this cotton from McGraw Bros. at Munday, but I had to take the records and check the records and find it out—I knew that a price had been fixed on some McGraw cotton. There have been other instances in my experience where we have sold price to be fixed later and a person from whom our seller bought the cotton fixed the price in New York. I do not think that is an unusual transaction at all. We have had it to happen very recently in the Dallas office and I know it happened when I was at Brownwood. In those cases we make settlement direct with the person from whom we bought the cotton. I believe that West Bros. sold to a lot of people besides the Southern Cotton Company, I understood they did."

After said cotton had been called, sold, and reports made thereof, appellant Southern Cotton Company paid the balance owing on the 100 bales of cotton, viz., $1,273.67, to West Bros., by a check sent from the Dallas office of appellant Southern Cotton Company, to G. A. Wall, its agent at Brownwood, Tex., payable to the order of West Bros. Said check was deposited by said Wall to the credit of West Bros. in the Citizens' National Bank at Brownwood, Tex. Prior to and at this time West Bros. owed appellant Southern Cotton Company $1,450. Immediately on this check being deposited, said Wall acting for appellant Southern Cotton Company, by telephone, requested West Bros. (Lee West) to send him a check on the Citizens' National Bank of Brownwood, payable to Southern Cotton Company, in the sum of $1,273.67, the amount that had been so deposited by Southern Cotton Company through Wall to the credit of "West Brothers," said payment to be applied as a credit on the sum due appellant Southern Cotton Company, by said "West Brothers"; that said check was sent as requested, received by said Wall, cashed, and the amount thereof placed as a credit on the amount of $1,450 due by said West Bros. to said appellant. In reference to this transaction, Lee West testified: "I remember this particular transaction quite well and I remember most of them. In a transaction like this McGraw transaction the way I would make my money is I would have to sell it for more than I gave for it. If I sold it for less than I gave for it, I stood the loss myself. I remember sending Mr. Wall a check on the bank at Brownwood; he told me the money was in there and I sent him a check for it to apply on my account with the Southern Cotton Com-

313

pany." And the witness G. A. Wall testified as follows: "I deposited that money to the credit of West Bros. That money was sent to me by check from Dallas, that is to the Southern Cotton Company at Brownwood. The check was to West Bros., it is my recollection that West Bros. was the payee. At that time West Bros. owed the Southern Cotton Company some money—they owed about $1,450.00, is my recollection. I took this check for $1,273.67 and deposited it to the credit of West Bros. in the Citizen's National Bank at Brownwood, Texas. About that time West Bros. paid me on account about $1,250.00 or $1,275.00, I don't recall the exact amount, but about the amount of this check. In this whole transaction I did not have any dealings directly with McGraw Bros. McGraw Bros. never did make any demand on me for the payment of this additional sum until afterwards, not before our settlement with West Bros. I cannot recall that McGraw Bros. made any demand on me before I settled with West Bros. and I do not believe they did. The first I knew of it was the draft that came in afterwards, after the call of the cotton"—which testimony is without contradiction in the record.

The following findings of fact made by the trial court we find to be without any evidence in support thereof, viz.: "That it was agreed between McGraw Brothers and Herman West, acting for the Southern Cotton Company, that said one hundred bales of cotton was sold by McGraw Brothers to the Southern Cotton Company; that the issuing of the check for the sum of $1273.67 by the Southern Cotton Company and its deposit in the Brownwood bank to the credit of West Brothers, and requesting by telephone a check from Lee West and the receipt of the same and the attempt to apply such amount to West Brothers' account to the Southern Cotton Company was a simulated transaction, done for the purpose of avoiding liability of the Southern Cotton Company to McGraw Brothers for the balance due them for the cotton; that prior to the time that the Southern Cotton Company issued the check and deposited it to West Brothers' credit, that they had notice that the cotton had been bought from McGraw Brothers and that McGraw Brothers were entitled to the balance of the money due for said cotton." Therefore, said findings are set aside.

Applying the well-established and generally recognized rules of law applicable to the undisputed facts established within and by the evidence, we have been led, we think unerringly, to conclude that of appellants' propositions the following should be and are sustained:

"No. 4: Since the trial judge in his findings of fact found that 'Lee West trading as West Brothers was an independent cotton dealer and was not employed as agent or as an employee of Southern Cotton Company', and since such finding was supported by the undisputed evidence and since the undisputed evidence further showed that all negotiations for the purchase of this cotton from McGraw Brothers were conducted by Herman West, a son of and employee of Lee West, and that Herman West had no connection with Southern Cotton Company, it was error for the court to find 'that it was agreed between McGraw Brothers and Herman West, acting for the Southern Cotton Company, that said one hundred bales of cotton were sold by McGraw Brothers to Southern Cotton Company at a price of 105 points off March call in New Work.'"

"No. 6: Since the undisputed evidence showed that the Southern Cotton Company dealt with West Brothers in good faith, thinking it was purchasing the cotton in question from them, and since before any claim for the final proceeds of said cotton was made to Southern Cotton Company by McGraw Brothers, Southern Cotton Company deposited the amount of said final payment to the credit of West Brothers in a bank, and a few days later required West Brothers to remit the amount of said payment to Southern Cotton Company to apply on a larger indebtedness owing by West Brothers to Southern Cotton Company, and since there was no evidence of any probative value tending to prove that said transaction was not open and above board, it was error for the trial court to find that such transaction was a simulated one.

"No. 7: Since the undisputed testimony showed that it was not unusual in the cotton trade for an 'F. O. B. Merchant' (such as West Brothers), to allow a 'country merchant' (such as McGraw Brothers), to call cotton which had been sold on margin, as in this case, and since the undisputed proof further showed that Southern Cotton Company settled for the balance of this purchase price with West Brothers before McGraw Brothers made any demand or gave any notice to Southern Cotton Company that they were claiming any part of such proceeds, the court erred in finding as a fact that Southern Cotton Company had notice of the fact that the proceeds of this sale belonged to McGraw Brothers, prior to the time of the issuance of the check for $1273.67 to West Brothers.

"No. 8: The court erred in concluding, as a matter of law, that the original contract was made between West Brothers and McGraw Brothers, in the face of its findings that West Brothers were (not) acting for Southern Cotton Company, and in the face of its further conclusion that plaintiffs had no cause of action against West Brothers, such conclusion being inconsistent with plaintiffs' theory of the case, inconsistent with the evidence, and inconsistent with the findings of the court.

"No. 9: Since under the undisputed evidence both McGraw Brothers and Southern Cotton Company were imposed upon by the

fraud of Herman West, who, in purchasing this cotton, represented himself to be an agent of Southern Cotton Company, when he was not, and since McGraw Brothers were negligent in not ascertaining the authority of the said West, and since they allowed the said West to give them a draft on the Southern Cotton Company for the initial purchase price of the cotton, thereby indicating that they had sold the cotton to West Brothers, and further allowed West to take possession of the cotton and resell it to Southern Cotton Company, an innocent purchaser, and allowed Southern Cotton Company to make final settlement with West Brothers, it was error for the court to render judgment against Southern Cotton Company, it being the more innocent of the two defrauded parties, the acts and negligence of McGraw Brothers having made it possible for the Wests to perpetrate a fraud on Southern Cotton Company."

Therefore, it follows as a natural sequence to the above holdings that the judgment of the trial court rendered in favor of appellees, J. P. McGraw and T. W. McGraw, composing a partnership known as McGraw Bros., against appellants Southern Cotton Company, a copartnership, and J. Inouye, a member thereof, should be and is reversed, and judgment rendered that said appellees take nothing by their cause of action against said appellants, and that said appellants recover all costs in all courts incurred herein, and that said judgment in all other respects be not disturbed by this holding, no appeal having been prosecuted therefrom by the parties affected thereby.

Reversed and rendered.